Mahler Textiles, Inc., Appellant, v. Andrew Woodka, Appellee.

Gen. No. 32,821.

178

Matchett, J., dissents.

Heard in the first division of this court for the first district at the June term, 1928. Opinion filed January 21, 1929. Rehearing denied and supplemental opinion filed February 4, 1929.

Ryan, Condon & Livingston, for appellant.

Loucks, Eckert & Peterson, for appellee; W. W. Patterson, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff, bringing suit on an alleged guaranty executed by defendant, upon trial by the court suffered an adverse finding with judgment that it take nothing, from which it appeals.

The decision of the case involves virtually only a construction of letters. Plaintiff was engaged in the business of selling and distributing cotton piece goods in the city of Chicago and the Baby Betty Apron Company of Chicago was one of its customers, manufacturing aprons and other wearing apparel, using cotton piece goods sold by plaintiff. Prior to August 11, 1926, plaintiff was having difficulty in collecting money due it from the Apron Company which was not keeping its

promises with reference to payment. Thereupon plaintiff wrote the defendant as follows:

"August 11, 1926.

"Mr. Andrew Woodka,
South Bend, Indiana.
Dear Sir: As you no doubt already know we have done considerable business with the Baby Betty Apron Company. The account of this concern on our books is now all paid up.

"Inasmuch as they have undergone a change in their financial structure, we should like very much to have an expression from you concerning the future payment policy of this concern and also a statement as to their present financial condition.

"It is only fair that we have the above information so that we can with intelligence determine a line of credit that would be consistent.

"If it were only a matter of a few hundred dollars we would not bother you at all, but it seems we have an opportunity to figure with them on merchandise that will possibly run up into $5,000 or $10,000. Will you kindly advise?

Yours very truly,

MM/SBM                          Mahler Textiles, Inc."

To this defendant replied:

"South Bend, Indiana,
P. O. Box #744
Aug. 13, 1926.

"Mahler Textiles, Inc.
Chicago, Illinois.
Gentlemen:

"Your letter of Aug. 11th received and contents noted. It is true that the Baby Betty Apron Company has undergone a change in their financial structure and the writer is back of this concern with sufficient finances to carry on in a satisfactory manner with sources of supply of raw material.

"This is being done, however, with the distinct un-

derstanding that all purchases by the Baby Betty Apron Company must be personally O. K.'d by the writer before being filled.

"Invoices must be sent out in duplicate; one copy to the Betty Apron Company and one copy to:

Mr. Andrew W. Woodka,<br>
P. O. Box #744,<br>
South Bend, Indiana.

"Trusting that contents of this letter will be of value to you and that you will comply with request contained therein, I remain

Yours very truly,

ES:AB                    A. Woodka."

Relying on this letter plaintiff thereafter shipped to the Baby Betty Apron Company on certain invoices a considerable amount of merchandise. All purchases were personally O. K.'d by defendant before being filled and invoices were sent in duplicate, one copy to the Baby Betty Apron Company and one copy to defendant. In other words, the conditions stipulated in the defendant's letter of August 13 were followed. October 23, 1926, the Apron Company went into bankruptcy, and having paid two small dividends there was a balance due on merchandise shipped of $1,496.55, which plaintiff seeks to recover in this action, alleging that the words of defendant used in his letter of August 13 constitute a guaranty, while defendant contends that it is merely a representation as to the advancement of money by defendant to the Apron Company and does not impose the obligation of a guarantor.

It is a well-established principle of law that no particular form or expression is necessary to create a guaranty.

"Any language or expression which, under the circumstances attending the transaction, may be construed as binding the guarantor to answer for another's debt or default is sufficient, and it is not even necessary that the word 'guaranty' should be used." 28 C. J. 911, sec. 42.

"Guaranties are seldom, if ever, framed in the same language, and whether a particular transaction constitutes a guaranty must be determined by its particular terms and by the surrounding circumstances." 12 R. C. L. p. 1055, sec. 3.

Numerous cases have been presented supporting the respective contentions of the parties, but, as would be expected, no case construing the precise instant language is cited. The case nearest in point is *Illinois Surety Co. v. Munro,* 289 Ill. 570, where the defendant wrote:

"This will introduce Mr. Edward F. Rice, who desires to get a cost bond in the Federal court, and this firm will stand back of any obligation which Mr. Rice may incur in this behalf."

This language was held to be a guaranty. In *Wendnagel v. Schiavone,* 203 Ill. App. 385, it was held that placing the initials "O. K." with the name of defendant bound him as a guarantor.

It is also a principle that, if there is anything doubtful in the construction of a contract, the conduct of the parties and their manner of treating it and all the circumstances may be resorted to for the purpose of ascertaining its meaning. *Home Nat. Bank of Chicago v. Waterman,* 30 Ill. App. 535. In *Exchange Nat. Bank of Spokane v. Pantages,* 74 Wash. 481, the telegram of the defendant requested the plaintiff bank to renew a note with the statement, "I will arrange things satisfactory to them upon my return." This was held to constitute a guaranty. Somewhat similar words were used in *McCauley v. Cross* (Tex. Civ. App.), 111 S. W. 790. In *Miami County Nat. Bank v. Goldberg,* 133 Wis. 175, a father wrote requesting the bank to permit his son to make overdrafts on the bank, saying, "Hope you will accommodate him and me also." This was construed to be a guaranty. See also *Goldring v. Thompson,* 58 Fla. 248; *Acorn Brass Mfg. Co. v. Gilmore,* 142 Ill. App. 567. A contract of guaranty should be construed as favorably to the creditor as other written

contracts. *Taussig v. Reid,* 145 Ill. 488; *Swisher v. Deering,* 204 Ill. 203.

As opposed to these cases we have *Eaton v. Mayo,* 118 Mass. 141, where the defendant wrote to the plaintiff: ''Let M. have what goods he may want on four months and he will pay as usual''; held, not a guaranty. Also *Crooks v. Propp,* 32 Misc. 309, 66 N. Y. Supp. 753, which involved a letter recommending a proposed purchaser and saying that any favors would be appreciated by the writer; held, not a guaranty.

Plaintiff was refusing to sell goods in the future to the Apron Company unless it should receive some assurance that it would be paid. Plaintiff's letter says that it would not take up the matter with defendant if only a few hundred dollars were involved, but did so because the merchandise might run up to five or ten thousand dollars. To this defendant's reply is that the Apron Company has made a change in its financial structure ''and the writer is back of this concern with sufficient finances to carry on in a satisfactory manner with sources of supply of raw material.'' One of the sources of supply of raw material was the plaintiff. The writer stipulates, however, that certain things must be done by the seller as a condition to his backing the Apron Company in a way satisfactory to the seller. These conditions are that all purchases must be personally O. K'd by defendant before being filled and duplicate invoices must be sent out, one to the Apron Company and one to the defendant at P. O. Box #744, South Bend, Indiana. Then, the letter adds: ''Trusting that contents of this letter will be of value to you and that you will comply with request contained therein, I remain, Yours very truly, A. Woodka.''

It is difficult to construe this letter in any other way than as a guaranty. It is only in this way that all of the language can be given meaning. To construe it as merely a representation that defendant was financially interested in the Apron Company neutralizes the conditions specified therein. Defendant would be

financially interested whether such conditions were complied with or not. The reasonable construction is that defendant would guarantee the payment of such orders as he approved when the invoices passed through his hands. It is also a reasonable inference that, if defendant had refused to O. K. the purchases from plaintiff, plaintiff would have refused to ship the same. It was the approval and confirmation of the defendant upon which plaintiff relied. The subsequent acts of the parties indicate that plaintiff accepted the letter of August 13 as defendant's guaranty of the account and plaintiff fully complied with the conditions therein laid down.

On October 5, which was shortly before the Apron Company went into bankruptcy, plaintiff wrote defendant calling attention to the fact that the account showed $1,800 due plaintiff and requested a remittance from defendant of $800 before shipping further goods. Defendant argues that this indicates that plaintiff did not rely on any guaranty of the defendant. We do not see any inconsistency in this request for a payment on account and reliance on the guaranty. Plaintiff was not bound to extend unlimited credit and might through precaution ask for a payment on account.

For the reasons indicated we hold that the finding of the trial court was erroneous and the judgment is therefore reversed and judgment will be entered in this court against the defendant for $1,496.55.

*Reversed and judgment here against defendant for $1,496.55.*

O'Connor, P. J., concurs.

Matchett, J., dissents.

Supplemental Opinion Upon Petition for Rehearing.

In plaintiff's statement of facts in his brief it was stated that there was a balance due plaintiff of $1,496.55. Defendant in his statement did not dispute or deny this. Under Rule 19 of this court such a statement may be taken as accurate unless the opponent

points out the inaccuracy. Therefore, following this rule, we took the plaintiff's statement of the amount due as accurate and entered judgment accordingly. In his petition for rehearing defendant for the first time calls our attention to the testimony of plaintiff's bookkeeper that the balance due is $1,241.87, and this seems to be the correct amount.

We therefore modify our opinion and judgment by changing the amount stated to be due and the judgment from $1,496.55 to $1,241.87; and as there are no material issues of fact made by the pleadings, the sole question being the construction of the letters, judgment is accordingly entered in this court.

*Reversed and judgment here against defendant for $1,241.87.*